# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

TERRY HENDERSON, et al.,      )      CASE NO. 5:25-cv-1079
                      )
                      )
        PLAINTIFFS,      )      CHIEF JUDGE SARA LIOI
                      )
vs.                    )
                      )      MEMORANDUM OPINION
                      )      AND ORDER OF REMAND
LINDSEY LEOPOLD, et al.,      )
                      )
                      )
        DEFENDANTS.      )

There are multiple motions pending before the Court. Plaintiffs, Terry Henderson ("Terry"), Richard Henderson ("Richard"), and Midnite Oil Co., LLC ("Midnite Oil") (collectively, "plaintiffs"), have moved to remand this matter to state court. (Doc. No. 11.) Defendants, Lindsey Leopold ("Leopold"), WorkforceQA, LLC ("WorkforceQA"), Quest Diagnostics of Pennsylvania, Inc. ("Quest Diagnostics"),[1] and Landstar Transportation Logistics, Inc. ("Landstar") (collectively, "defendants"), each seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 18 (WorkforceQA's Motion to Dismiss); Doc. No. 20 (Quest Diagnostics's and Leopold's Motion to Dismiss); Doc. No. 22 (Landstar's Motion to Dismiss).) Landstar alternatively seeks a transfer of venue. (*See* Doc. No. 22.)

"When confronted with a motion to remand and a motion to dismiss, the Court must decide

---

[1] In its response to plaintiffs' motion to remand, Quest Diagnostics indicates that it was incorrectly named and served in this action as "LabOne of Ohio, LLC." (Doc. No. 23, at 1 (All page number references to the record herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.).) Because the parties use "Quest Diagnostics" to refer to this defendant throughout the briefing, the Court will do the same.

the motion to remand first." *See Open Sys. Tech. DE, Inc. v. Transguard Ins. Co. of Am.*, No. 1:14-cv-312, 2014 WL 3625737, at *2 (W.D. Mich. July 22, 2014) (citation omitted); *see also McNally v. Kingdom Tr. Co.*, No. 5:21-cv-68, 2021 WL 4555838, at *1 (W.D. Ky. Oct. 5, 2021) (noting that a district court should decide a motion to remand first "because if remand is appropriate, then the state court should decide the motion to dismiss." (quotation marks and citation omitted)). Accordingly, the Court turns its attention first to the motion to remand.[2] Because the Court finds that remand is appropriate in that the Court lacks jurisdiction to entertain this action, the motion is granted, and this case is remanded to state court.

## I.  BACKGROUND

Terry and Richard are married, and together they own and operate Midnite Oil. (Doc. No. 1-2 (Complaint) ¶¶ 1–2.) They are also truck drivers, each having earned a commercial driver's license, which includes certain special certifications permitting them to ship weapons and ammunition for the United States Department of Defense ("DOD"). (*Id.* ¶ 7.) Through Midnite Oil, Terry and Richard would enter into exclusive trucking relationships with large transportation companies (including companies with DOD clearance). (*Id.* ¶¶ 10–11.)

In May 2024, Terry and Richard decided to enter into an exclusive trucking relationship with Landstar. (*Id.* ¶ 12.) To finalize the arrangement, Landstar required Terry and Richard to take certain actions, including severing ties with Midnite Oil's existing exclusive trucking partner and successfully completing "pre-employment drug screening tests that are subject to formal Department of Transportation regulations and procedures (the 'DOT Regulations')[.]" (*Id.* ¶ 13.)

---

[2] The motion to remand is fully briefed. (Doc. No. 23 (Quest Diagnostics's and Leopold's Response); Doc. No. 24 (WorkforceQA's Response); Doc. No. 25 (Landstar's Response); Doc. No. 27 (Plaintiffs' Reply).)

Landstar relies on third-party administrator WorkforceQA, who "facilitate[es] drug testing and/or reporting of drug tests for/to individuals, employers, prospective employers and/or relevant government agencies." (*See id.* ¶¶ 5, 22.) Quest Diagnostics supplies drug testing facilities, including one located in Akron, Ohio, and Landstar advertises that Quest Diagnostics is its "preferred vendor" for these laboratory tests. (*Id.* ¶¶ 21–22; *see id.* ¶ 4.)

On May 3, 2024, Terry and Richard reported as directed to Quest Diagnostics's Akron facility to complete their pre-employment drug screening tests. (*Id.* ¶ 20.) Leopold, an employee of Quest Diagnostics, was present for the tests. (*See id.* ¶ 3.) Richard was able to successfully complete both of his drug tests, and Terry also successfully completed her first drug test without incident. (*Id.* ¶ 23.)

According to plaintiffs, Quest Diagnostics failed to follow the proper procedures—including the governing DOT Regulations—on Terry's second test. (*Id.*) In particular, the complaint provides that Terry's second test yielded an insufficient amount of specimen (identified in the complaint as the "Incomplete Urine Sample") for the test. (*Id.* ¶ 23; *see id.* ¶ 27(f).) Rather than follow the DOT Regulations—"that would have permitted Terry a full three hours to complete her urine sample drug test"—Leopold forced Terry to leave the testing facility within 30 minutes of producing the Incomplete Urine Sample because it was 4:00 p.m. and the facility was about to close.[3] (*Id.* ¶ 27(e), (g).)

---

[3] Title 49 C.F.R. 40, *et seq.* governs the procedures for transportation workplace drug and alcohol testing. Pursuant to 49 C.F.R. § 40.193(b)(1), when a collector fails to obtain a sufficient specimen to perform the urine drug screen, the collector is directed to discard the insufficient specimen, urge the test subject to drink 40 ounces of fluid over a period of three hours, and attempt another collection. Additionally, 49 C.F.R. § 40.195 provides that when an individual is unable to provide a sufficient specimen for a pre-employment drug test, the medical evaluator administering or overseeing the test must rule out the existence of a legitimate medical condition that may interfere with the collection of a sufficient specimen before reporting to the employer that the subject engaged in a "refusal to test."

Leopold informed Terry that Quest Diagnostics would treat the failed second test as a "shy bladder" situation—as that term is understood in the DOT Regulations—"since Terry had [previously] been placed on legitimate medication for incontinence[.]" (*Id*. ¶ 27(i).) Leopold also assured Terry that her departure from the facility that day would not result in a "refusal to test" report being made to the national Federal Motor Carrier Safety Administration ("FMCSA") Clearinghouse. (*Id*. ¶ 27 (h); *see id*. ¶ 16.) Instead, Leopold advised Terry that she could remedy the second failed test by scheduling and submitting to a retest the following day (May 4, 2024). (*Id*. ¶ 27(j).) Terry appeared at Quest Diagnostics's Akron facility on May 4, 2024, and was able to successfully complete the retest. (*Id*.)

Leopold and Quest Diagnostics failed to properly document the failed test on May 3, 2024 as a "shy bladder" situation (*id*. ¶ 27(i), (k)), resulting in Landstar "prematurely and wrongly" concluding that they were required to report the Incomplete Urine Sample as a "refusal to test" to the FMCSA Clearinghouse. (*Id*. ¶ 27(o).) In the weeks and months that followed Landstar's allegedly erroneous report to the FMCSA Clearinghouse, Landstar conspired with Quest Diagnostics and WorkforceQA to cover up their collective failure to follow the DOT Regulations regarding Terry's "shy bladder" situation and the Incomplete Urine Sample. (*Id*. ¶ 27(u).) Despite receiving "verifiable and irrefutable evidence that the Incomplete Urine Sample was not the result of a '[r]efusal to [t]est[,]'" Landstar also refused to retract or withdraw its reports with the FMCSA Clearinghouse. (*Id*. ¶ 27(t).)

As a result of the "refusal to test" reports, Terry's commercial driver's license was revoked for a period of five years, and Terry has, therefore, since been unable to perform her truck driving duties on behalf of Midnite Oil. (*Id*. ¶ 28(b).) Plaintiffs have also been prevented from pursuing

4

"more lucrative DOD trucking work because DOD clearance requires two actively-licensed truckers, which no longer includes Terry[.]" (*Id*. ¶ 28(e).) Additionally, plaintiffs maintain that defendants' actions have damaged Terry's reputation, interfered with Midnite Oil's business relationships, and destroyed plaintiffs' ability to engage with companies that are subject to DOT Regulations. (*Id*. ¶ 28(a), (g).)

On April 24, 2025, plaintiffs brought suit against defendants in the Summit County Court of Common Pleas. (Doc. No. 1-2, at 3.) The complaint raises six tort claims sounding exclusively in Ohio common law: negligence (Count I), invasion of privacy (Count II), defamation (Count III), intentional infliction of emotional distress (Count IV), tortious interference with business relationships (Count V), and civil conspiracy (Count VI). (*See generally id*. ¶¶ 31–59.) Several of the tort claims rely, at least in part, on defendants' failure to follow the DOT Regulations as the tortious conduct. (*See id*. ¶¶ 33, 36, 41, 47, 58; *see also id*. ¶ 14 (defining defendants' alleged failure to follow the DOT Regulations as the "Negligent and Tortious Conduct"). A seventh claim seeks injunctive relief. (*See id*. ¶¶ 60–64.) In their prayer for relief, plaintiffs request compensatory and punitive damages, attorney's fees, costs and expenses, and a "Court Order requiring [d]efendants to remove, retract and/or correct their false statements and reports that Terry reportedly engaged in a 'refusal to test' or 'failed' her drug test[.]" (*Id*., Prayer, at 21.)

On May 27, 2025, defendants removed this action to federal court, pursuant to 28 U.S.C. § 1331. (Doc. No. 1 (Notice of Removal) ¶ 11).) In their removal notice, defendants represent that, "[o]n their face, [p]laintiffs' claims necessarily raise significant federal issues." (*Id*. ¶ 12.) In support, defendants highlight that plaintiffs' complaint alleges violations of DOT Regulations, and further note that Landstar's report of Terry's failed drug test to the FMCSA Clearinghouse as a

"refusal to test," as well as the consequences of that reporting decision, was governed by federal law. (*Id.* (citing 49 C.F.R. §§ 382.705, 40.191).) Defendants also suggest that plaintiffs' complaint "directly invokes federal jurisdiction" because plaintiffs seek injunctive relief "that requires the state court [to] overturn or set aside procedures and consequences specified by DOT regulations regarding a refusal to submit to drug testing." (*Id.* ¶ 13 (citing Doc. No. 1-2 ¶¶ 60–64).)

## II.   MOTION TO REMAND

Plaintiffs insist that remand to state court is necessary because they "have merely pled state law tort claims in their [c]omplaint." (Doc. No. 11, at 4.) While they do not necessarily dispute that the complaint alleges violations of federal regulations, they underscore that "[t]he Supreme Cour[t] of the United States and the Sixth Circuit Court of Appeals have repeatedly and consistently held that the presence of a claimed violation of federal regulations or statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." (*Id.* at 5 (collecting cases).) According to plaintiffs, neither the allegations relating to DOT Regulations violations, nor the request for injunctive relief, supplies this Court with federal jurisdiction. (*Id.* at 4–6.)

### A.  Standard of Review

On a motion to remand, the inquiry is limited to whether the district court lacks subject matter jurisdiction. *Hart v. Gen. Electric Co.*, No. 1:23-cv-12, 2023 WL 6201502, at *1 (S.D. Ohio Sept. 22, 2023) (citing 28 U.S.C. § 1447(c)). As the removing parties, defendants bear the burden of establishing that removal was proper. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006) (citing, among authority, *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 757 (6th Cir. 2000)). Because removal raises significant federalism concerns, federal courts must strictly

construe removal statutes. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941). Accordingly, a federal court must resolve any doubt of its removal jurisdiction in favor of finding no federal jurisdiction. *Id*.

### B.  Federal Question Jurisdiction Generally

Federal courts are courts of limited jurisdiction and possess only the power authorized by the United States Constitution or by statutes. *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994). Here, defendants do not contend that the Court has original jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction) (*see* Doc. No. 1 ¶ 12; *see also id*. ¶¶ 2–6 (pleading allegations that would defeat a finding of complete diversity)), so the Court's jurisdiction over this matter must be based upon 28 U.S.C. § 1331 (federal question jurisdiction).

Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986); *see Eastman*, 438 F.3d at 550 (referring to the first gateway as the "well-worn thoroughfare" that "admits litigants whose causes of action are created by federal law, that is, where federal law provides a right to relief" (citation omitted)). A second (far less common) portal to federal question jurisdiction involves "state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005) (recognizing the existence of "another longstanding, if less frequently encountered variety of federal 'arising under' jurisdiction"); *see Eastman*, 438 F.3d at

7

550 (describing the "implicates significant federal issues" portal as the "path less traveled").

The presence or absence of federal question jurisdiction is generally governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) (citation omitted). The rule makes the plaintiff the master of his complaint, and he may avoid federal jurisdiction by exclusive reliance on state law. *Id.*

Looking at the face of the complaint, it is clear that plaintiffs have only pleaded state law claims. While plaintiffs allege violations of the DOT Regulations relating to pre-employment drug testing and reporting, all claims are stated in terms of common law torts. Moreover, it is well settled that the DOT drug testing laws and regulations do not confer a private cause of action. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 307–08 (6th Cir. 2000); *see Griffin-Ware v. Los Angeles Metro. Transp. Auth.*, No. 2:14-cv-4493, 2015 WL 12830380, at *2 (C.D. Cal. Apr. 29, 2015) (noting that "every court to consider the question has concluded that there is no private right of action for violations of the Department of Transportation's drug-testing regulations" (collecting cases)). Federal law, therefore, does not create the causes of action.

### C.  Implicates a Significant Federal Issue

Because the Court finds that federal law does not provide a right to relief, the Court must consider whether this case may arrive in federal court via the less travelled throughfare of "implicating significant federal issues." The Supreme Court has found that, notwithstanding a plaintiff's characterization of his claims as arising under state law, a significant federal question is present where claims "necessarily raise a stated federal issue, actually disputed and substantial,

which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. This "doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law[.]" *Id.* at 312.

At issue in *Grable*, a state-law quiet title action, was the question of whether the Internal Revenue Service had given the plaintiff landowner sufficient notice of the sale of his property in the manner required under federal tax law. *Id.* at 311. In finding the existence of federal jurisdiction, the Supreme Court determined that this tax issue implicated strong federal interests: the duties of federal officials in providing notices of federal tax sales, the validity of a deed from a federal agency, and the collection and potential refund of federal taxes. *Id.* at 315. The Court also determined that exercising federal jurisdiction over such a state-law property dispute was likely to be an uncommon occurrence and would not disturb the balance of federal and state judicial responsibilities. *Id.* at 319 ("[I]t is the rare state quite title action that involves contested issues of federal law . . . .").

*Grable* contrasted an earlier case, *Merrell Dow*, in which a question of federal law embedded in a state law claim was found insufficient to confer federal-question jurisdiction. *Id.* at 316–20. In *Merrell Dow*, the plaintiff alleged that the defendant drug company had violated federal statutory drug labeling requirements, and that the violation constituted *per se* negligence under Ohio law. *Merrell Dow*, 478 U.S. at 805–06. Even though the plaintiff's state claim would require a state court to interpret and apply federal law, the Supreme Court found that the state-claim did not arise under federal law, especially given the fact that Congress did not provide a federal cause of action for misbranding. *Id.* at 811–12. The Court in *Grable* explained that *Merrell Dow* did not

permit federal jurisdiction for the typical state law negligence claim that merely relied on a federal statute as the source of the duty and its violation as a breach, as such a result would have "heralded a potentially enormous shift of traditionally state cases into federal courts." *Grable*, 545 U.S. at 319 (explaining that the Supreme Court in *Merrell Dow* thought it entirely unlikely that "Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort implicating federal law 'solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] . . . under state law'" (quoting *Merrell Dow*, 478 U.S. at 811–12)).

The Court in *Grable* further clarified that *Merrell Dow* should not be read to imply that the absence of a federal cause of action is fatal to a finding of federal jurisdiction, noting that the case "should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of the sensitive judgments about congressional intent that § 1331 requires." *Grable*, 545 U.S. at 318 (quotation marks and citation omitted). It is, therefore, "an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." *Id.*; *but see Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (noting that even without a federal private right of action, substantial federal question jurisdiction will still lie if the state claim "depends on the validity, construction, or effect of federal law" (citation omitted)).

Applying the principles in *Grable*, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013) (discussing the

*Grable* test). "Where all four of these requirements are met, . . . jurisdiction is proper[.]" *Id.*; *see Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1014 (6th Cir. 2018). If any of the four requirements are not satisfied, the exception does not apply. *Bolton v. Gallatin Ctr. v. Rehab. & Healing, LLC*, 535 F. Supp. 3d 709, 717 (M.D. Tenn. Apr. 21, 2021) (citations omitted). In conducting this analysis, the Court is mindful that the substantial federal question doctrine is narrowly applied—"*Grable* emphasized that it takes more than a federal element to open the 'arising under' door." *Mikulski*, 501 F.3d at 568 (citation omitted); *see Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006) (finding that the plaintiff's contract law claim "cannot be squeezed into the slim category *Grable* exemplifies").

Application of the factors identified in *Grable* leads to the conclusion that the federal law embedded in plaintiffs' complaint—unlike *Grable* and more like *Merrell Dow*—merely supplies the duties and responsibilities that serve as the predicate for traditional state law claims that cannot provide the basis for federal question jurisdiction.

### 1. *Necessarily Raised and Actually Disputed*

The first two *Grable* factors support a finding of federal jurisdiction. Plaintiffs' complaint repeatedly references the DOT Regulations and relies on alleged violations of these federal regulations by defendants. (*See, e.g.*, Doc. No. 1-2 ¶¶ 23, 27.) Because plaintiffs must essentially prove a violation of federal law to prevail on certain claims, and because this analysis will require a court to apply the DOT Regulations, the Court finds that a federal issue is necessarily raised in this case. *See, e.g., McClure Tel. Co. v. AT & T Commc'ns of Ohio, Inc.*, 650 F. Supp. 2d 699, 708 (N.D. Ohio 2009) (finding plaintiff's state law claims raised disputed issues of federal law where

evaluating the claims required the court to analyze and construe federal law).

Likewise, the Court finds, for purposes of this motion, that the federal issue is actually disputed. The existence of a disputed federal issue requires a showing that the parties "must 'cross swords over' a federal issue such that two competing interpretations are asserted." *Funderwhite v. Local 55, United Ass'n*, 702 F. App'x 308, 313 (6th Cir. 2017) (citing *Mikulski*, 501 F.3d at 569 (further citation omitted)). While it is unclear at this juncture what competing interpretations of the DOT Regulations the parties intend to advance, it is clear that defendants dispute that they violated the DOT Regulations regarding drug testing and reporting of refusals to test. (*See, e.g.*, Doc. No. 23, at 5 ("Defendants dispute these allegations, all of which raise issues regarding the roles and responsibilities of employees, employers, and DOT service agents under federal law." (citing 49 C.F.R. §§ 40.191, 40.355(i).) At this juncture, the Court will assume that the second *Grable* factor is satisfied.

### 2. *Substantial*

The last two factors prove problematic for defendants. Courts evaluating the substantiality prong often focus on four considerations: "(1) 'whether the case includes a federal agency, and particularly, whether the agency's compliance with the federal statute is in dispute'; (2) 'whether the federal question is important (i.e. not trivial)'; (3) 'whether a decision on the federal question will resolve the case (i.e. the federal question is not merely incidental to the outcome)'; and (4) 'whether a decision on the federal question will control many other cases (i.e. the issue is not anomalous or isolated).'" *Estate of Cornell*, 908 F.3d at 1015 (quoting *Mikulski*, 501 F.3d at 570).

The first consideration "weighs against characterizing the federal interest as substantial because there is no federal agency in this dispute." *Id*. (citing *Mikulski*, 501 F.3d at 570 (further

citation omitted)); *see also Grable*, 545 U.S. at 315 (explaining that a federal issue is more likely to be substantial if "[t]he Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action"). Here, unlike the situation in *Grable*, a government agency does not require a federal forum in which to determine the validity of its actions. While defendants concede that there is no federal agency defendant (Doc. No. 23, at 8; Doc. No. 25, at 8), they suggest that the issue is substantial because the DOT regulations impose "a non-delegable duty" (Doc. No. 23, at 8) upon participants that implicates "important federal questions about drug testing regulations and the obligations of employers and service agents under those regulations." (Doc. No. 25, at 8.) Defendants have offered no case authority to suggest that duties placed on private individuals and entities, or the importance of the drug testing regulations, can stand in as a proxy for a government interest. There is no doubt that, in the abstract, the DOT regulations governing drug testing are important to the safety of this nation's highways, but alone this is not enough to classify a federal issue as substantial. If it were, there would be no need to consider the "direct[ness]" of the government's interest in the availability of a federal forum, as the Supreme Court did in *Grable*, 545 U.S. at 315, and the type and number of cases falling into this "special and small category" of cases would expand exponentially. *See Empire Healthchoice Assurance, Inc.*, 547 U.S. at 699.

This leads into the second consideration, which for many of the same reasons also cuts against finding the substantiality factor met. In *Gunn*, the Supreme Court clarified that the substantiality requirement is not met simply because the resolution of the federal issue is "vitally important to the particular parties in that case." *Gunn*, 568 U.S. at 263–64. There must be "something more, demonstrating that the question is significant to the federal system as a whole."

13

*Id*. at 264. While there is no doubt that resolution of the federal issue regarding whether defendants violated the DOT Regulations is important to the parties, there is no indication that application of the facts of this case to the DOT Regulations will be important to the federal system as a whole. In *Empire*, the Court explained that a federal issue is more likely to be present if a "pure issue of [federal] law" is "dispositive of the case"; "fact-bound and situation-specific" disputes typically do not implicate substantial federal issues. 547 U.S. at 700–01; *see Burkett v. SE Indep. Delivery Servs., Inc.*, No. 2:17-cv-786, 2018 WL 1093320, at *3 (M.D. Ala. Feb. 28, 2018) (finding no federal-question jurisdiction because whether defendant violated a federal law is "a classically fact-specific inquiry[,]" the resolution of which will not govern federal cases prospectively). Here, there is no "pure issue of federal law" to resolve. Rather, the case presents a fact-bound and situation-specific dispute regarding whether defendants violated the DOT Regulations during Terry's second drug test on May 3, 2024, and in the subsequent reporting of the results as a "failure to test."

Quest Diagnostics and Leopold's reliance on *H.R. ex rel. Reuter v. Medtronic, Inc*., 996 F. Supp. 2d 671 (S.D. Ohio 2014) (Black, J.) is misplaced. (*See* Doc. No. 25, at 7–8.) In *Reuter*, the plaintiff alleged that defendants illegally promoted an off-label use of a liquid bone graft product, known as "Infuse," in violation of federal regulations. 996 F. Supp. 2d at 675. Despite the fact that the complaint raised only state law claims, the district court found that federal question jurisdiction was present, noting that "[t]here is no state-law equivalent of 'off label' . . . [t]he concept is entirely federal [so the state claims] necessarily raise substantial federal questions by requiring the Court to interpret the meaning of the FDCA and its implementing regulations[.]" *Id.* at 679 n.6 (quotation marks and citation omitted).

14

The decision in *Reuter*, however, has been roundly rejected by subsequent cases involving the Infuse medical product because it failed to consider the clarification in *Gunn* that the disputed federal issue must be "significant to the federal system as a whole[.]" *Gunn*, 568 U.S. at 264. "The vast majority of relevant federal court opinions post-*Gunn* have held that a state claim revolving around liability for the misuse of Infuse does not raise a substantial federal issue despite the claim's reliance on FDCA regulations." *Middendorf v. W. Chester Hosp., LLC*, 233 F. Supp. 3d 615, 620 (S.D. Ohio 2017) (Black, J.) (collecting cases); *see, e.g., Roden v. Medtronic, Inc.*, 41 F. Supp. 3d 593, 603 (W.D. Ky. 2014) (rejecting *Reuter* for failing to consider *Gunn's* emphasis that "only a limited subset of cases should fit within the scope of the substantial federal question doctrine"); *Waitz v. Yoon*, No. 1:14-cv-2875, 2015 WL 11511577, at *4 (N.D. Ga. June 30, 2015) (rejecting *Reuter* for similar reasons and collecting cases). Even the jurist who penned the decision in *Reuter* has since questioned it's finding of federal jurisdiction for its failure to "take into account the United States Supreme Court's holding in *Gunn*." *Middendorf*, 233 F. Supp. 3d at 619–20 ("This Court joins with the prevailing consensus in holding that there is no substantial federal issue raised in this civil action.").

As for the third consideration, the interpretation and application of the DOT Regulations will not necessarily resolve the case. While a finding that defendants did not violate the DOT Regulations may largely resolve the claims, a finding of federal regulatory violations would not. If the state court determines that the DOT Regulations were violated, it would also need to determine whether defendants conspired to coverup their violations and whether they tortiously interfered with plaintiffs' business relationships in the process. Additionally, it would need to determine whether the DOT Regulation violations constitute intentional infliction of emotional

distress, invasion of privacy, and/or defamation under Ohio law, as well as whether the federal regulatory violations proximately caused plaintiffs' damages.

Finally, defendants have not demonstrated that the resolution of the federal issues presented in this case will control "numerous other cases." *Empire*, 547 U.S. at 700 (citing *Grable*, 545 U.S. at 313). Quest Diagnostics and Leopold speculate that any decision regarding whether the DOT Regulations were violated "could have a broad impact because other entities may seek to set aside those determinations in a non-Federal forum." (Doc. No. 23, at 8–9; *see also* Doc. No. 25, at 8 (suggesting, without support, that a "state court ruling could undermine the integrity of the federal regulatory framework and create inconsistent standards").)[4] This Court fails to see how the state court's interpretation and application of the DOT Regulations to the facts as presented in this case would be dispositive or controlling in numerous other cases, especially given the fact-specific nature of the inquiry.

Applying the four guiding considerations, the Court finds that the federal issue embedded in the plaintiffs' state law claims is not substantial.

### 3. Federal/State Balance

Even if a state-created claim includes a contested and substantial federal issue, the exercise of federal jurisdiction is not necessarily appropriate; the federal issue will "qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing application of § 1331." *Grable*, 545

---

[4] Defendants' concerns regarding inconsistent court rulings and those who are subject to the DOT Regulations seeking alternative forums in which to challenge DOT-regulated drug tests, would be present regardless of whether the alternative forum was a state or federal court. Further, neither the superior experience and expertise federal courts may have interpreting and applying federal regulations, nor the possibility that a state court might incorrectly resolve the issue, is sufficient to confer federal jurisdiction. *Gunn*, 568 U.S. at 263.

U.S. at 313–14. As noted, Congress has not created a private right of action for an alleged violation of the DOT regulations governing drug testing. *See Parry*, 236 F.3d at 307–08; *Griffin-Ware*, 2015 WL 12830380, at *2. Not only does the text of the federal regulations fail to include an explicit private right of action, *see Griffin-Ware*, 2015 WL 12830380, at *1 (citing *Hall v. United Labs, Inc.*, 31 F. Supp. 2d 1039, 1042 (N.D. Ohio 1998)), "there are no indicia that Congress intended to create an implicit private right of action . . . , [as such a right] is unnecessary to the regulations' underlying purpose because the [DOT] has its own administrative remedial scheme[.]" *Id.* (citing, among authority, *Hall*, 31 F. Supp. 2d at 1042).

While "the absence of a federal private right of action does not entirely decide the issue of congressional intent[,] . . . it is persuasive evidence that Congress did not intend to set out a 'welcome mat' inviting state court claims with embedded federal issues like this one into federal court." *Fochtman v. Rhino Energy, LLC*, No. 13-cv-104, 2013 WL 5701468, at *2 (E.D. Ky. Oct. 17, 2013) (citing *Grable*, 545 U.S. at 317–18; *Merrell Dow*, 478 U.S. at 810–12). Additionally, unlike other areas of federal transportation law,[5] Congress did not see fit to preempt state remedies. The lack of a private right of action, when combined with no preemption of state remedies, is "an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." *Grable*, 545 U.S. at 318.

These considerations lead to the conclusion that allowing federal jurisdiction over these state claims would be inconsistent with congressional judgment about the sound division between

---

[5] For example, the Carmack Amendment completely preempts a shipper's state common law and statutory causes of action. *See Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06, 33 S. Ct. 148, 57 L. Ed. 314 (1913) (observing that, "[a]lmost every detail of the [shipper-interstate carrier relationship] is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and superseded all state regulation with reference to it").

state and federal courts governing the application of § 1331. Plaintiffs' pleaded federal regulation violations fit into their state claims in the way that is consistent with the state law claims addressed in *Merrell Dow*: as a fact tending to satisfy an element of the state claim. *See Merrell Dow*, 478 U.S. at 805–06; *see, e.g., Hampton v. R.J. Corman R.R. Switching Co. LLC*, 683 F.3d 708, 712 (6th Cir. 2012) ("Hampton's claim is a garden-variety state tort claim" that alleges that defendants were presumptively negligent under Kentucky law for violating federal regulations governing railroad crossings, and it did not confer federal question jurisdiction.) Indeed, the language of the complaint makes this clear. (Doc. No. 1-2 ¶ 14 (defining the DOT Regulation violations as the "Negligent and Tortious Conduct"); *see id.* ¶¶ 33, 36, 41, 47, 58.) Allowing garden-variety state law claims premised on breach of some federal standard of care to proceed in federal court would essentially federalize an entire category of cases that Congress has intentionally not federalized. It would also circumvent the administrative remedies of these federal regulations established by Congress, greatly disturbing the balance between federal and state judicial responsibilities.

Yet, defendants insist that the Eighth Circuit's decision in *Wullschleger v. Royal Canin U.S.A., Inc*., 953 F.3d 519 (8th Cir. 2020), compels a different result. Relying on this non-binding authority, defendants argue that plaintiffs cannot ignore that their state-law claims are "'so dependent upon federal law that they cannot 'be adjudicated without reliance on and explication of federal law.'" (Doc. No. 25, at 7 (quoting *Wullschleger*, 953 F.3d at 522); *see* Doc. No. 23, at 5 (similar).) In *Wullschleger*, the plaintiffs sought "to represent a class of Missouri plaintiffs who purchased prescription pet foods at premium prices from" the defendants. 953 F.3d at 520. Though the plaintiffs alleged only state claims, the Eighth Circuit observed that the "[p]laintiffs dependence on federal law permeates the allegations such that the antitrust and unjust enrichment

18

claims cannot be adjudicated without reliance on and explication of federal law." *Id*. at 522. At the same time, the court recognized that "*Merrell Dow* forecloses removal of state law claims that merely include a violation of federal law as an element of the offense, without other reliance on federal law." *Id*. at 521. This case is materially different from *Wullschleger*. As previously noted, plaintiffs' claims fall squarely within the category of claims "that merely include a violation of federal law as an element of the offense[.]" *Wullschleger*, 953 F.3d at 521.

### 4. *Injunctive Relief*

Defendants also lean on *Wullschleger* to posit that plaintiffs' request for injunctive relief supplies federal jurisdiction. (*See* Doc. No. 25, at 7 ("Plaintiffs cannot downplay the relief they seek to avoid federal jurisdiction.").) Once again, *Wullschleger* is inapposite. In *Wullschleger*, plaintiffs sought, among other things, to "enjoin[] Defendants from engaging in further violations of federal law[.]" *Wullschleger*, 953 F.3d at 522. Here, plaintiffs "do not seek injunctive relief in the form of the enforcement of [] federal laws[.]" *See, e.g., Marshall v. Conway Reg'l Med. Ctr*., No. 4:20-cv-933, 2020 WL 5746839, at *2 (E.D. Ark. Sept. 25, 2025) (distinguishing *Wullschleger* on similar grounds and finding no federal jurisdiction). Moreover, contrary to defendants' representations, plaintiffs' request for injunctive relief does not seek to "overturn and nullify consequences required by DOT drug testing regulations[.]" (Doc. No. 23, at 10; *see* Doc. No. 1 ¶ 13 (suggesting that the complaint seeks to "overturn or set aside procedures and consequences specified by DOT regulations regarding a refusal to submit to drug testing").) Rather than calling upon a state court to overturn a federal administrative decision, the complaint merely requests an order compelling defendants to correct any inaccurate or untruthful statements made to the FMCSA Clearinghouse in their report. (Doc. No. 1-2, Prayer, D.) The DOT remains free to

19

determine how Terry's administrative appeal of the suspension of her commercial license will be resolved. (*See* Doc. No. 27, at 2–3.)

Of course, to the extent plaintiffs have requested relief that is beyond the powers of a state court, the state court would be "capable of considering such arguments and respecting the limits of its jurisdiction, and such limits [would] not give rise to a necessary federal issue—except perhaps a federal defense, which is insufficient to confer [federal] jurisdiction." *Molina Healthcare, Inc. v. Celgene Corp.*, No. 21-cv-5483, 2022 WL 161894, at *13 (N.D. Cal. Jan. 18, 2022) ("That some relief Molina seeks might not be available in state court does not in itself grant Defendants the right to remove the case to a federal court potentially more capable of entering broader judgment against them."); *see also Hickey v. Duffy*, 827 F.2d 234, 240 (7th Cir. 1987) ("A party should not be able to obtain federal jurisdiction by adding, to a complaint that does not establish such jurisdiction, a request for a remedy the court is forbidden to give."); *Lawrence v. Wilson*, No. 1:22-cv-136, 2023 WL 3443255, at *3 (W.D. Ky. May 12, 2023) ("'Rule 65 [governing requests for injunctive relief] does not confer jurisdiction on federal courts. Instead, it restricts the power of the federal court to act in those cases in which it already has jurisdiction.'" (quoting *Lake Lansing Special Assessment Protest Ass'n v. Ingham Cnty. Bd. of Comm'rs*, 488 F. Supp. 767, 771 (W.D. Mich. 1980))); *Healthcare Ventures of Ohio, LLC v. HVO Operations Windup LLC*, No. 20-cv-4991, 2020 WL 6688994, at *7 (S.D. Ohio Nov. 13, 2020) (citing, among authority, *Merrell Dow*, 478 U.S. at 808 ("A defense that raises a federal question is inadequate to confer federal jurisdiction.")). The request for injunctive relief does not confer federal question jurisdiction.

### III.    CONCLUSION

Ultimately, with only two of the four *Grable* factors satisfied, it is clear that this case is not among the "special and small category" of cases that implicates a significant federal issue. *See Empire Healthchoice Assurance, Inc*., 547 U.S. at 699. Because this case cannot "pass through [this narrow] alternative federal-question-jurisdiction portal[,]" *see Hampton*, 683 F.3d at 712, remand for lack of federal subject matter jurisdiction is warranted.

Accordingly, plaintiffs' motion to remand (Doc. No. 20) is granted. The Clerk is directed to remand this case to the Summit County Court of Common Pleas.

**IT IS SO ORDERED**.

Dated: November 14, 2025

_____
**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

21